**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| j2 GLOBAL COMMUNICATIONS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ZILKER VENTURES, LLC, et al., <br><br> Defendants. | NO. CV 08-07470 SJO (AJWx) <br><br> **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br> **[Docket No. 101]** |

This matter is before the Court on Defendants Zilker Ventures, LLC and ChooseWhat.com, LLC's (collectively, "Defendants") Motion for Summary Judgment, filed September 14, 2009.[1] Plaintiffs j2 Global Communications, Inc. ("j2 Global") and its subsidiary Call Sciences, Inc. (collectively, "Plaintiffs") filed an Opposition, to which Defendants replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for October 5, 2009. See Fed. R. Civ. P. 78(b). For the following reasons, Defendants' Motion is DENIED.

---

[1] Defendants did not comply with the U.S. District Court Central District form and format rules. Failure to comply in the future may result in the Court striking the pleading.

## I. BACKGROUND

Plaintiffs provide internet fax and messaging services, and use the trademarks eFax® and Onebox® to market and sell their services. (Defs.' Statement of Uncontroverted Facts and Conclusions of Law ("SUF") 1-4; Compl. ¶¶ 12-14.) Specifically, Plaintiffs are the owners of a group of U.S. Trademark Registration numbers for marks associated with their services.[2] (SUF 1-4; Compl. ¶¶ 15-19.) Defendants operate the websites faxcompare.com and pbxcompare.com, which state that they offer "unbiased" information about various internet faxing services and online PBX service providers. (SUF 8; Compl. ¶ 24.) This information includes what fees each service charges, whether the service offers a free trial, what hours customer support is available for each service, and other features of each service. Plaintiffs allege that these websites are not unbiased because Defendants collect commissions and sales bonuses from Plaintiffs' competitors when Defendants' marketing and promotion efforts result in a customer purchasing the competitor's services. (Compl. ¶¶ 22, 24; Pls.' Opp'n 1.) Plaintiffs claim that Defendants rate Plaintiffs' paying competitors higher than Plaintiffs and do not disclose to viewers that they are paid by Plaintiffs' competitors to promote their services. (Compl. ¶ 25.) Plaintiffs also allege that Defendants use Plaintiffs' trademarks on their websites without permission, and use them as "keywords" in internet advertising programs, such that when consumers enter "efax" as a search term on Google, Defendants' advertisements appear. (Compl. ¶¶ 23-24.)

Based on Defendants' operation of their websites and their use of Plaintiffs' trademarked terms, Plaintiffs brought suit against Defendants alleging: (1) trademark infringement; (2) unfair competition; and (3) false advertising. Defendants now move for summary judgment as to

---

[2] Plaintiff j2 owns the U.S. Trademark Registration No. 1,786,350 for the mark "E-FAX," which has been registered on the Supplemental Register since August 3, 1993. (Compl. ¶ 15.) Additionally, Plaintiff j2 owns two U.S. Trademark Application Serial Nos.: (1) No. 75/656,348; (2) No. 76/524,244 for "E-FAX" and "EFAX" on the Principal Register. (Compl. ¶¶ 16-17). Plaintiff j2 also owns a family of marks that incorporate the mark eFax®. (Compl. ¶ 18.) Plaintiff Call Sciences owns U.S. Trademark Registration Nos. 2,836,857 and 3,479,654 for the marks "ONEBOX" and "ONEBOX CONNECTS THE WORLD TO YOU," registered on the Principal Register since April 27, 2004 and August 8, 2008 respectively. (Compl. ¶ 19.)

Plaintiffs' Complaint. (*See generally* Defs.' Mot. for Summ. J.)  Additionally, Defendants request that the Court enter judgment in their favor as to their anti-SLAPP claims.

II. DISCUSSION

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one that could affect the outcome of the case, and an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the non-moving party. *Id.* at 255.

    A. Trademark Infringement

"To establish a trademark infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, [a plaintiff] must establish that [a defendant] is using a mark confusingly similar to a valid, protectable trademark of [the plaintiff's]." *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *see also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1153 (9th Cir. 2002) (*citing Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994)) (claims for unfair competition "brought under California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act").  Registration of a mark on the Principal Register "constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Brookfield*, 174 F.3d at 1047.  These same evidentiary presumptions are not provided to marks registered on the Supplemental Register. *See* 15 U.S.C. § 1057(b).

In order for Plaintiffs to establish a trademark infringement claim, they must first establish that their marks are valid and protectable.

1. <u>Genericness of the Claimed Mark</u>

"Marks that constitute a common descriptive name are referred to as generic. A generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 195 (1985).* "Generic terms are not registerable and a registered mark may be canceled at any time on the grounds that it has become generic." *Id.* (citing 15 U.S.C. §§ 1052, 1064(c)). However, "[t]he general presumption of validity resulting from federal registration [on the Principal Register] includes the specific presumption that the trademark is not generic." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061, 1067 (9th Cir. 2003) (citing *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982) *overruled in part on separate grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 125 (2004). Moreover, a mark may only be registered on the Principal Register if it is distinctive, either inherently or through acquisition of a secondary meaning. *California Cooler, Inc. v. Loretto Winery, LTD.,* 774 F.2d 1451, 1454 (9th Cir. 1985) (*citing* 15 U.S.C. § 1052(f)). Registration on the Supplemental Register, however, indicates that the mark is "capable of distinguishing." *Id.* Thus, when a mark is registered on the Principal Register, the burden is placed on the defendant to overcome the presumption and prove invalidity. *Id.* (citing *Vuitton Et Fils S.A. v. J Young Enterprises, Inc.*, 644 F.2d 769, 774 (9th Cir. 1981)). In contrast, because supplemental registration does not confer the same evidentiary benefits and is not "prima facie evidence of the validity of the registered mark," *CreAgri, Inc. v. USANA Health Sciences, Inc.,* 474 F.3d 626, 629 n.6 (9th Cir. 2007) (*quoting* 15 U.S.C. § 1057(b))*,* the registrant plaintiff bears the burden of proving that the mark is not generic in the face of a defendant's defense

of genericness.³ *Filipino Yellow Pages, Inc. v. Asian Journal Publications,* 198 F.3d 1143, 1146 (9th Cir. 1999).

### a. eFax®

In the instant case, Defendants allege that Plaintiffs' mark eFax® is a generic mark that does not merit protection. (Defs.' Mot. Summ. J. 4:7.) Specifically, Defendants allege that eFax® is generic because it is the combination of two generic "words." (Defs.' Mot. Summ. J. 4:15-27.) Defendants assert that "in the internet age" it is common knowledge that "'e' is attached to many dictionary words" in order to denote "electronic." (Defs.' Mot. Summ. J. 4: 15-22.) Additionally, Defendants aver that "fax" is the generic term for facsimile, and thus when the "abbreviation and common vernacular for the term 'electronic' [is added] to the dictionary generic word 'fax' . . ." the generic nature of the term[s] is not changed." (Defs.' Mot. Summ. J. 4:15-27.) However, the Ninth Circuit applies the "anti-dissection rule" for "evaluating the trademark validity of composite terms." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198 F.3d 1143, 1150 (1999). In other words, the validity of a composite mark, or a mark compromised of two component parts, is determined by "viewing the trademark as a whole . . . [and] [t]hus, the composite may become a distinguishing mark even though its components individually cannot." *Id. (*citing *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451 (9th Cir. 1985)).

Nevertheless, as Plaintiffs' mark eFax® is not registered on the Principal Register, the burden rests on Plaintiffs to prove that the mark is not generic. *Filipino Yellow Pages, Inc.*, 198 F.3d at 1146. As the non-moving party in the instant Motion, the facts must be viewed in the light

---

³ Plaintiffs cite to *Express Diagnostics Int'l v. Tydings*, No. C 06-01346, 2009 WL 111736, at *4 (N.D. Cal. Jan. 15, 2009), for the proposition that supplemental registration is sufficient to shift the burden to Defendants to prove genericness. However, the Court is not bound by *Express Diagnostics Int'l* as it is an unpublished District Court opinion from the Northern District of California. Additionally, there is substantial precedent in the Ninth Circuit to support the Court's conclusion that *only* those marks registered on the Principal Register are entitled to the presumptions of validity and distinctiveness, and thus require that a defendant challenging such a mark bear the burden to prove genericness. *See CreAgri, Inc. v. USANA Health Sciences, Inc.,* 474 F.3d 626 (9th Cir. 2007); *see also Filipino Yellow Pages, Inc. v. Asian Journal Publications,* 198 F.3d 1143 (9th Cir. 1999); *California Cooler, Inc. v. Loretto Winery, LTD.,* 774 F.2d 1451 (9th Cir. 1985).

most favorable to Plaintiffs. *Anderson*, 477 U.S. at 255. Moreover, Plaintiffs must only prove that there is a genuine factual dispute regarding the genericness of its mark eFax®. *See* Fed. R. Civ. P. 56(c). It is undisputed that eFax® is registered on the Supplemental Register. (SUF 4.) As noted above, a mark may only be registered on the Supplemental Register if the United States Patent and Trademark Office ("USPTO") finds that the mark is capable of distinguishing. *California Cooler, Inc.,* 774 F.2d at 1454. Additionally, Plaintiffs allege that the "eFax® brand is the most used internet faxing service . . . and [that they and their] predecessors in interest have used the mark in inter-state commerce on or in connection with internet fax and related services for over 20 years." (Pugh Decl. ¶¶ 3, 4, 14, 15, 17, 20; Adelman Decl. ¶ 3.) Furthermore, Plaintiffs contend that they have "more than eight million customers for [their] eFax services," resulting in annual revenues that exceed $100 million. (Pugh Decl. ¶¶ 4, 15, 16.) Plaintiffs' extensive advertising and promotional efforts also support Plaintiffs' assertion that, when viewed as a composite term, eFax® is not generic.

As the nature of eFax® must be evaluated by looking at the term as a whole, and because Plaintiffs have presented sufficient evidence to indicate that a factual dispute exists regarding the nature of eFax®, the Court is unable to conclude at this time that, as a matter of law, eFax® is generic.

      b. <u>Onebox®</u>

Plaintiffs use their mark Onebox® in connection with their telecommunications services. (SUF 7.) It is undisputed that Plaintiffs' mark Onebox® is validly registered on the Principal Register, and that its Registration Number is 2836857. (SUF 7.) Furthermore, it is undisputed that Onebox® is not generic and that it merits the full protection provided by registration. (*See* Defs.' Mot. Summ. J. 9:13-22.)

    2. <u>Secondary Meaning</u>

While determining that a mark is not generic is one step towards protection, it is not dispositive. A mark that is descriptive does not necessarily merit protection. *See Park 'N Fly, Inc.,* 469 U.S. at 194. In contrast to a generic mark, a descriptive mark is a mark that describes the "qualities or characteristics of a good or service, and this type of mark may be registered [on the

Principal Register] only if the registrant shows that it has acquired secondary meaning . . . ." Id. (*citing* 15 U.S.C. §§ 1052(e), (f)). Secondary meaning is an additional meaning that attaches to a word or symbol that is not inherently distinctive. *McCarthy on Trademark* § 15.1. A mark has acquired a secondary meaning when it has become distinctive of the applicant's goods in commerce. *Park 'N Fly,* 469 U.S. at 194 (*citing* 15 U.S.C. §§ 1052 (e),( f)). Determining whether a mark has achieved a secondary meaning is a question of fact, and thus when secondary meaning is an issue at the summary judgment stage, the motion "must be denied where a genuine factual dispute as to whether secondary meaning exists." *McCarthy on Trademark*, §15.29 (*citing Am. Scientific Chem., Inc. v. Am. Hosp. Supply Corp.*, 690 F.2d 791 (9th Cir. 1982)).

     a.  <u>eFax®</u>

  In the instant case, Defendants allege that without consumer survey evidence, Plaintiffs are unable to support their allegation that eFax® has a secondary meaning. (Defs.' Mot. Summ. J. 5:5-27.) While some courts have determined that consumer survey evidence *may* be the most persuasive way to prove secondary meaning, it is not the only way. *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989). Rather, circumstantial evidence, including "evidence of the size of the seller, the number of actual sales made . . . amount spent [o]n promotion and advertising . . . and any similar evidence showing wide exposure of the buyer class to the mark in question," is often the most common type of evidence used to prove secondary meaning. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1358 (9th Cir. 1985). Defendants attempt to rely on Plaintiffs' failure to conduct consumer surveys as evidence that eFax® has not achieved a secondary meaning. Plaintiffs' failure to do so is not dispositive because consumer survey evidence is not necessarily required. *See Vision Sports, Inc.*, 888 F.2d. at 615. Moreover, Plaintiffs allege that their use of the eFax® mark for over 20 years, in conjunction with their extensive advertising campaigns and substantial customer base, is sufficient circumstantial evidence to support a finding of secondary meaning. (Pls.' Statement of Genuine Issues of Material Facts ("SGI") 4-13.) As the evidence must be viewed in light most favorable to the non-moving party, the Court concludes that there remains a material factual dispute as to whether eFax® has acquired a secondary meaning.

b.  Onebox®

Defendants do not discuss whether Onebox® has acquired a secondary meaning because it is undisputed that Onebox® is validly registered on the Principal Register. (SUF 7; Defs.' Mot. Summ. J. 9:13:15.)

3.  Likelihood of Confusion and Fair Use

Even if a mark is determined to be descriptive and to have acquired a secondary meaning, use of that mark will not be infringement unless such use is likely to cause confusion. "[T]rademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). In addition to "actual" or "source" confusion between a registered mark and an allegedly infringing mark, the Ninth Circuit recognizes the "initial interest confusion" theory of trademark liability. *See Interstellar Starship Services, Ltd. v. Epix Inc.*, 304 F.3d 936, 941 (9th Cir. 2002). "Initial interest confusion occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion." *Id.*

In order to determine the likelihood of confusion, including interest confusion, a trier of fact considers the eight factors delineated in *AMF Inc. v. Sleekcraft Boats*: (1) the similarity of the marks; (2) the relatedness or proximity of the two companies; (3) the strength of the registered mark; (4) the marketing channels used; (5) the degree of care likely to be exercised by the purchaser in selecting goods; (6) the accused infringers' intent in selecting its mark; (7) evidence of actual confusion; and (8) the likelihood of expansion in product lines. 599 F.2d 341, 348-49 (9th Cir. 1979) (quoting *Interstellar Starship Services, Ltd.*, 304 F.3d at 942), *abrogated in part on other grounds by Mattel Inc. v. Walking Mountain Prod.*, 353 F.3d 792 (9th Cir. 2003). However, the Ninth Circuit has determined that when the internet is involved, the three most important *Sleekcraft* factors are: (1) similarity of the marks; (2) the relatedness of the goods or services; and (3) the parties' simultaneous use of the web as a marketing channel. *Interstellar Starship Services, Ltd.*, 304 F.3d at 942. Moreover, when those three factors suggest that confusion is likely, the other

remaining five factors must weigh heavily against a finding of confusion in order to avoid a finding of trademark infringement. *See Perfumebay.com v. eBay Inc.*, 506 F.3d 1165, 1174-75 (9th Cir. 2007).

Additionally, a defendant may avoid a finding of trademark infringement if it can be established that a defendant's use of a mark was a nominative fair use. In order to establish the nominative fair use defense where a defendant uses a trademark to describe a service other than his own, the defendant must show that: (1) the product must not be readily identifiable without the mark; (2) only so much of the mark as is reasonably necessary to identify the product is being used; and (3) that nothing is being done that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *NewKids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

In the instant case, Defendants allege that even if Plaintiffs' marks eFax® and Onebox® are distinctive marks with secondary meanings, and thus protectable, infringement has not occurred because there is no likelihood of confusion caused by Defendants' use of the marks and moreover, their use constituted nothing more than nominative fair use. (*See generally* Defs.' Mot. Summ. J. 9:13-13:2.) It is undisputed that Defendant Zilker uses eFax® as a keyword to trigger advertisements through Google's advertising program AdWord. (*See* Defs.' SUFs. 10, 12.) Plaintiffs contend that such use constitutes initial use confusion because when customers type "eFax" into a search engine, like Google, they are directed to Defendants' website faxcompare.com where they are presented with an array of online fax services, including Plaintiffs' competitors. (SGI 48, 50, 51, 57.) Furthermore, Plaintiffs contend that many customers who are directed to Defendants' site subsequently sign up with Plaintiffs' competitors who are reviewed more favorably by Defendants as a result of the fee that is paid to them. (SGI 50-52, 56-57.) As a result of customers signing up with Plaintiffs' competitors, Plaintiffs allege that Defendants receive revenue. (SGI 50-52, 56, 57.) Moreover, Plaintiffs allege that the three crucial *Sleekcraft* factors weigh heavily in favor of a finding of a likelihood of confusion because: (1) Defendants use Plaintiffs' exact eFax® mark in their advertising campaigns; (2) both parties are trying to sell online fax services; and (3) both are competing to sell their services to the same customer base using

the same marketing channel - the internet. (Pls.' Opp'n 16:21-17:8.) Contrarily, Defendants aver that their use of "eFax" as a keyword in their advertising campaign and domain name does not result in confusion. (Defs.' Mot. Summ. J. 12:21-13:2.) However, Defendants do not submit evidence to substantiate their allegation.

Defendants further allege that their use of eFax® constitutes a nominative fair use. (Defs.' Mot. Summ. J. 9:23-10:8.) Specifically, Defendants contend that Plaintiffs' marks are used only to identify Plaintiffs as vendors who provide services that are being reviewed by Defendants. (SUF 13.) Moreover, Defendants contend that nothing on their sites suggests that Defendants' sites are sponsored or endorsed by Plaintiffs. (Decl. Enrico Schaefer ¶¶ 13-14.) The Court finds the evidence presented by Defendants in support of a nominative fair use defense to be insufficient to meet their burden of persuasion.

Similarly, Defendants contend that their use of Onebox® in their advertising campaigns and on their websites is a nominative fair use because it is used in order to identify Plaintiffs' service. (Defs.' Mot. Summ. J. 9:20-28.) A triable issue of fact still remains as to this issue as neither party has provided evidence regarding consumer confusion, or lack thereof.

As there remain factual disputes regarding the protection merited by Plaintiffs' claimed marks eFax® and Onebox®, as well as the likelihood of confusion and the availability of a fair use defense, the Court cannot make a dispositive determination regarding trademark infringement at this stage in the proceedings. Accordingly, summary judgment is DENIED on the issue of trademark infringement.

      B.      <u>False and Misleading Statements</u>.

Under § 1125(a)(1)(B) of the Lanham Act, a defendant may be held civilly liable for making false or misleading representations of facts in commercial advertising of his or another person's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B). Commercial advertising is commercial speech, by a defendant who is in commercial competition with the plaintiff, used to influence costumers to buy defendant's goods or services, and is disseminated sufficiently to the public to be considered advertising within the industry. *See Rice v. Fox Broadcast Co.*, 333 F.3d 1170, 1181 (9th Cir. 2003). Additionally, the Ninth Circuit has held that state common law claims

and claims under § 17200 of the California Business and Professions Code for false advertising and unfair competition are "substantially congruent" to claims made under the Lanham Act. *See Cleary v. News Corp.,* 30 F.3d 1255, 1262-63 (9th Cir. 1994).

In the instant case, Defendants allege that not only are their statements not commercial advertising, they are not false or misleading. Specifically, Defendants aver that their businesses are analogous to Consumer Reports as they do not sell their own product, rather they review the services of other companies. (See SUF 8.) Contrarily, Plaintiffs allege that while Defendants may not sell their own product, they are in the business of selling the services that they review in return for a commission fee. (*See* SGI 29-34.) Additionally, Plaintiffs allege that Defendants' reviews are biased in favor of those service providers that they have contracts with, and that Defendants' contractual relationships with service providers are not disclosed to the public. (*See* SGI 29-34.) Defendants do not dispute that they do receive payments from some of the service providers that are reviewed on their websites. (SUF 14.) Additionally, it is undisputed that Defendants' websites review and promote Plaintiffs' competitors. (SUF 8.) Moreover, it is undisputed that customers can access Defendants' websites through common search engines such as Google by searching for services such as "electronic facsimile." (SUF 13.) In light of this undisputed evidence, the Court concludes at this juncture that Defendants engage in "commercial advertising," as it is defined by the Lanham Act.

Nevertheless, commercial advertising must be false or misleading to be actionable under the Lanham Act. See 15 U.S.C. § 1125(a)(1)(B). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farmers v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (*citing Castrol, Inc. v. Penzoil Co.*, 987 F. 2d 939, 943 (3d Cir. 1993)). "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id.* (citing *Castrol,* 987 F.2d at 946). Additionally, liability may exist for statements that are literally true but that can be shown to mislead, confuse, or deceive the consuming public. *Id.* (*citing Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228-29 (3d Cir. 1990)).

While consumer deception will be presumed if it can be shown that a defendant intended to deceive, such intent is a "quintessentially factual question." *See William H. Morris Co. v. Group W, Inc.,* 66 F.3d 225, 258-59 (9th Cir. 1995).

Plaintiffs contend that Defendants' reviews of their services contain "false information about the character and quality of the services." (Pls.' Opp'n 18.) Specifically, Plaintiffs contend that Defendants' statement on their grid that eFax® does not provide a 30-day free trial was literally false. (SGI 66.) Moreover, Plaintiffs allege that in fact they provided a "free trial to thousands of customers in 2007, 2008, and 2009." (SGI 7-9.) Additionally, Plaintiffs aver that Defendants' "deception" was intentional as Defendants knew that Plaintiffs did offer a trial but could not indicate this on their website since they did not "have access to [Plaintiffs'] landing page, and [do] no[t] [have a] business agreement with eFax®, [Defendants] could not advertise that [Plaintiffs'] offer[ed] a 30-day trial." (SGI 67-68.) Plaintiffs also contend that Defendants' grid contained false statements with respect to whether Plaintiffs offered a toll-free number free of charge with their services. (SGI 28, 61; SUF 15, 16.) Defendants allege that their statement regarding a fee for a toll-free number was not only accurate, but that they provided the "language now complained of to Plaintiffs for review and comment, although no response was provided by either company." (SUF 19.) Additionally, Plaintiffs contend that Defendants' statements regarding Onebox® are false and misleading. (SGI 20.) Specifically, Plaintiffs allege that statements on Defendants' grid regarding the lack of a free trial are false and misleading. (SGI 20.) In contrast, Plaintiffs allege that consumers are in fact offered a free trial for the services on Onebox®. (SGI 21.)

The Court finds that discrepancies clearly remain as to the accuracy of the statements on Defendants' grid. Moreover, the intent behind such allegedly false and misleading statements is a question of fact that is not appropriate for resolution on summary judgment. Accordingly, summary judgment is DENIED on the issue of false and misleading advertising.

C. <u>Anti-SLAPP Defense</u>

Defendants allege that they are entitled to attorneys' fees and costs under California's anti-SLAPP provisions. The Court previously determined that such provisions are applicable to this action, but declined to dismiss Plaintiffs' Complaint since it met the prima facie requirements. Again, the Court declines to award Defendants relief under the anti-SLAPP provisions because summary judgment has been DENIED as to all claims. Accordingly, the Court declines to reach the merits of Defendants' anti-SLAPP claim.

III. <u>RULING</u>

For the foregoing reasons, the Court DENIES Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: November 4, 2009

*S. James Otero*

_____
S. JAMES OTERO
UNITED STATES DISTRICT JUDGE